WILLIAM E. FITZPATRICK
United States Attorney
DAVID E. DAUENHEIMER
Assistant United States Attorney      *Document Electronically Filed*
970 Broad Street, Suite 700
Newark, New Jersey 07102
(973) 645-2925
david.dauenheimer2@usdoj.gov

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　*Plaintiff,*<br><br>　v.<br><br>MATTHEW SCHWARTZ,<br><br>　　　　　　*Defendant.* | HON. ROBERT B. KUGLER<br><br>*Civil Action No.* 16-cv-2930<br>(RBK)(AMD) |

## BRIEF OF THE UNITED STATES OF AMERICA IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

　　　　　　　　　　　　　　　　　　　　WILLIAM E. FITZPATRICK
　　　　　　　　　　　　　　　　　　　　Acting United States Attorney
　　　　　　　　　　　　　　　　　　　　970 Broad Street, Suite 700
　　　　　　　　　　　　　　　　　　　　Newark, New Jersey 07102

*On the Brief:*
DAVID E. DAUENHEIMER
Assistant United States Attorney

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS .......................................................................................1

    a. The Public Works of Art Project ................................................................2
    b. The Painting's Provenance ........................................................................3

ARGUMENT .............................................................................................................4

    a. Standard for Summary Judgment ..............................................................4
    b. There is No Genuine Issue of Fact as to The Provenance or Ownership
    c. of The Painting...........................................................................................6

CONCLUSION..........................................................................................................8

## **TABLE OF AUTHORITIES**

**CASES**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .......................................................................................... 5

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .......................................................................................... 5

*Hatteras, Inc. v. USS Hatteras etc. in rem*, 1984 AMC 1094, 1096 (1981) .................. 7

*Kem Copters, Inc. v. Allied Helicopter Serv ., Inc.*,
   277 F.2d 308 (9th Cir. 1990) ............................................................................. 7

*International Aircraft Recovery v. Unidentified Wrecked and Abandoned Aircraft*,
   218 F.3d 1255 (11th Cir. 2000) ......................................................................... 6

*Israel Disc. Bank of N.Y. v. H.N. Int'l Grp., Inc.*,
   No. CV 16-6258-BRM-LHG, 2016 WL 6023155 (D.N.J. Oct. 14, 2016) .................. 6

*Mandelbaum v. Weiss*,
   11 N.J. Super. 27 ............................................................................................... 6

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) .......................................................................................... 5

*Nicini v. Morra*,
   212 F.3d 798 (3d Cir. 2000) .............................................................................. 5

*Robertson v. Allied Signal, Inc.*,
    914 F.2d 360 (3d Cir. 1990) .................................................................................. 5

*Romero v. SmithKline Beecham*,
    309 F.3d 113 (3d Cir. 2002) ................................................................................... 5

*Schuylkill & Dauphin Improvement Co. v. Munson*,
    81 U.S. 442 (1871) ................................................................................................. 5

*United States v. City of Columbus*,
    180 F. Supp. 775 (S.D. Ohio 1959) ....................................................................... 7

*United States v. Steinmetz*,
    763 F. Supp. 1293 (D.N.J. 1991) 973 F.2d 212 (3rd Cir. 1992) ............................. 7

*Vida v. Ruckle Bros.*,
    135 N.J.L. 570 (Sup. Ct. 1947) .............................................................................. 6

**STATUTES**

N.J.S.A. 2B:50–1 ................................................................................................................ 6

**RULES**

Fed. R. Civ. P. 56(a) .......................................................................................................... 5

## **PRELIMINARY STATEMENT**

The plaintiff, United States of America ("United States"), brought this action on behalf of the General Service Adminstration ("GSA") against defendant, Matthew Schwartz, for conversion (under federal common law and New Jersey law), trespass to chattels (under New Jersey law), unjust enrichment (under federal common law and New Jersey law) and replevin (under New Jersey law) based on his refusal to return to the possession and control of the United States a John Slavin painting and its frame ("the Painting"), which are owned by the United States but are in Mr. Schwartz's possession and control. By way of a still-pending motion for writ of replevin, the United States also sought the immediate return of the painting to the United States' possession and control. The United States now moves for summary judgment in this matter.

## **STATEMENT OF FACTS**

GSA became aware that the Painting was posted for sale on eBay in October of 2015. *See* Ex. A - Declaration of Jennifer Gibson. The painting was listed for sale with the description, "JOHN SLAVIN WPA NORFOLK VA MUSEUM LIFESIZE PORTRAIT 1934 FARMER…". Ex. A-1. The eBay seller's description of the painting included the following representations:

**"Original Frame WPA Plaque + Museum Exhibition Label Verso."**

**"Complete with original wooden frame featuring authentic brass WPA plaque"**

**"Authenticity Guaranteed"**

The sale price for the painting was $8,500.00.  *Id.*

    A.    <u>The Public Works of Art Project</u>

Between 1933 and 1934, the Public Works of Art Project was one of the federal government's various New Deal art projects that contributed to the creation of the first major body of public American art.  While the Public Works of Art Project was the first of the government's New Deal era art programs, it was not officially a part of the Works Progress Administration's ("WPA") art programs. However, the PWAP is many times associated with the WPA and artwork is many times mislabeled or interchanged as WPA, because it served as a model for the subsequent WPA era art projects. *See* Ex. A at paras 5-6. Title to the works of art produced under the Public Works of Art Project is defined in the Bulletin, "Legal Title to Works Produced under the Public Works of Art Project."  This document states, "All works of art produced by the project which are movable and not executed to occupy some particular locations are the property of the Federal Government…" Ex. A at para. 7. During that time period, one of the ways the federal government identified ownership of works of art that were created under various New Deal art programs was by affixing the work with an identifying "press plate."  The plate "Public Works of Art Project" on the frame of the painting indicates that a work of art was created under the Public Works of Art Project. In addition to the frame tag, labels were attached to the paintings, "indicating its title, the artist producing it and the fact it was produced under the Public Works of Art Project." *See* Ex. A-2 Item 3.  During the New Deal era, Public Works of Art Project

2

paintings were loaned to museums. The report "Public Works of Art Project, Report of the Assistant Secretary of the Treasury to Federal Emergency Relief Administrator," ("PWAP Report") states "This art went into public schools… into public libraries, into museums… " Ex. A-3 page 9.

As the successor in interest to the Public Works of Art Project, one of GSA's present functions is the maintenance of an extensive portfolio of artwork created during the New Deal era, which includes public artwork that adorns federal buildings, as well as an extensive inventory of more than 22,000 pieces of artwork that are housed in non-federal institutions and museums around the country, where they may be enjoyed by the public. Ex. A at para. 11.

B.  The Painting's Provenance

Upon learning of the advertised sale of the Painting that was labeled as having been produced under the Public Works of Art Project, GSA researched the history of the Painting. The PWAP report lists John Slavin as having been one of the artists employed by the Public Works of Art Project. *See* Ex. A-3, page 49. The Painting is documented as being a Public Works of Art Project painting by the frame tag. *See* Ex. A-4, photo of frame tag downloaded from Defendant's eBay listing. In addition to the PWAP frame tag, the painting is identified with a label that documents both the painting and the museum where the painting was loaned. *See* Ex. A-5, photo of label downloaded from Defendant's Ebay listing. As a part of the investigation into the matter, the Office of the Inspector General obtained numerous letters documenting the provenance and loan of the Painting. One of

3

these letters is from the Public Works of Art Project and identifies the Painting, Pennsylvania Farmer, by John D. Slavin, among others. In the letter it states, "These works are the property of the United States Government but are loaned to the Norfolk Museum of Arts and Sciences for an indefinite period." *See* Ex.A-6. In addition to the letter, there is a listing on PWAP letterhead with the Painting "Pennsylvania Farmer" as one of the paintings sent to the museum. *See* Ex. A-7. The letter dated December 7, 1934, from the museum to the PWAP, documents the museum's acknowledgment that the painting is "loaned to the Norfolk Museum of Arts and Sciences by Public Works of Art Project." *See* Ex. A-8. According to the Chrysler Museum of Art, despite the fact that the painting was only on long term loan to the Norfolk Museum, the painting was deaccessioned and sold through auction by James R. Bakker Antiques on Sunday, September 15, 1991. *See* Ex. A-9.

There are no provisions of the Public Works of Art Project that would allow a private person to obtain ownership of a work of art produced under the Project. Such an action would be contrary to the purpose of the Project. *See* Ex. A at para. 22.

## ARGUMENT

**SUMMARY JUDGMENT SHOULD BE GRANTED IN FAVOR OF UNITED STATES BECAUSE THERE IS NO GENUINE ISSUE OF FACT AS TO THE PROVENANCE OF THE PAINTING AND AS A MATTER OF LAW THE UNITED STATES IS THE OWNER AND ENTITLED TO POSSESSION**

A.   **Standard for Summary Judgment**

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can succeed on its

application by demonstrating that "there is an absence of evidence to support the [opposing] party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). To defeat a motion for summary judgment, the opposing party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted). Although a court deciding a summary judgment motion must view the facts in the light most favorable to the non-moving party and draw all inferences in that party's favor, *see Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000), mere speculation and conjecture may not defeat the motion. *See Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n. 12 (3d Cir. 1990). Rather, "[the] party opposing a motion for summary judgment must 'go beyond the pleadings' and demonstrate that a reasonable factfinder could return a favorable verdict; vague allegations, unsupported by any facts, are insufficient to defeat summary judgment." *Romero v. SmithKline Beecham*, 309 F.3d 113, 119 (3d Cir. 2002) (quoting *Celotex*, 477 U.S. at 324). The question for a court deciding a summary judgment motion is not "whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (quoting *Schuylkill & Dauphin Improvement Co. v. Munson*, 81 U.S. 442, 448 (1871)).

B. **There is No Genuine Issue of Fact as to The Provenance or Ownership of The Painting**

Under New Jersey law, replevin is governed by N.J.S.A. 2B:50–1, *et seq.*, which provides, in pertinent part: "[a] person seeking recovery of goods wrongly held by another may bring an action for replevin.... If the person establishes the cause of action, the court shall enter an order granting possession." *Israel Disc. Bank of N.Y. v. H.N. Int'l Grp., Inc., No.* CV 16-6258-BRM-LHG, 2016 WL 6023155, at *3 (D.N.J. Oct. 14, 2016). In an action for replevin, "the burden [is] on the plaintiff ... to establish ownership, absolute or qualified, with the right to exclusive possession at the time of bringing the action . . . ." *Vida v. Ruckle Bros.*, 135 N.J.L. 570, 571 (Sup. Ct. 1947); *Mandelbaum v. Weiss*, 11 N.J. Super. 27. 30-31 (App. Div. 1950).

The United States Constitution authorizes the federal government to own, use and dispose of property, which is a power vested in the United States Congress. U.S. Constitution, Article 4, Section 3, Clause 2, Const. art. TV., § 3, cl. 2. In this case, the Painting was produced for the federal government as part of the Public Works of Art Project. In the absence of Congressional authority divesting the government's interest in the property, the painting remains the rightful property of the federal government. In this case, there is no evidence of, and GSA is not aware of, any provision under the Public Works of Art Project that would allow ownership of the painting by anyone other than the United States. Ex. A, paras. 7, 18, 19, 22.

Property of the federal government cannot be abandoned. *See International Aircraft Recovery v. Unidentified Wrecked and Abandoned Aircraft*, 218 F.3d 1255,

1258 (11th Cir. 2000) ("as courts consistently have recognized, the federal government cannot abandon property absent an affirmative act authorized by Congress"); *United States v. Steinmetz*, 763 F. Supp. 1293, 1298 (D.N.J. 1991), *aff'd* 973 F.2d 212 (3rd Cir. 1992) ("It is well settled that title to property of the United States can not be divested by negligence, delay, laches, mistake, or unauthorized actions by subordinate officials") *citing Hatteras, Inc. v. USS Hatteras etc. in rem*, 1984 AMC 1094, 1096 (1981), *affd without opinion*, 698 F.2d 1215 (5th Cir. 1983)). *See also Kem Copters, Inc. v. Allied Helicopter Serv ., Inc.*, 277 F.2d 308, 313 (9th Cir. 1990) ( only Congress has the power to abandon federal property); *United States v. City of Columbus*, 180 F. Supp. 775, 777 (S.D. Ohio 1959) ("Property of the United States Government is held in trust for the benefit of its citizens and the Government cannot be deprived of such property by inactivity, neglect, oversight, carelessness or even intentional conduct of its agents or employees").

    Applying the law to the facts of this case, the Painting was produced for the federal government and remains federal property today. Under the Public Works of Art Project, the Painting was produced for the federal government and is part of the United States' body of public art. The label on the Painting indicates ownership by the federal government. Plaintiff's own representations for the purpose of selling the painting on eBay indicated that it was a government commissioned work of art. There is no evidence that private ownership of the painting was authorized. In fact, the evidence establishes that the Painting was merely on long-term loan to the Norfolk Museum of Arts and Sciences and specifically noted to be, and to remain,

the property of the United States Government.  Despite the passage of time, ownership therefore remains with the federal government and the United States is entitled to summary judgment in this action seeking the Painting's return.

## CONCLUSION

For these reasons, the Court should grant the United States' motion for summary judgment and order the immediate return of the Painting to the United States.

Dated: July 28, 2017
     Newark, New Jersey

                              Respectfully submitted.
                              WILLIAM E. FITZPATRICK
                              Acting United States Attorney

                              */s/ David E. Dauenheimer*
                       By: DAVID E. DAUENHEIMER
                              Assistant United States Attorney